## Curry v. Napolitano

*Paul A. McGinley*, for plaintiff.
*William S. Hudders*, for defendant.

KOCH, J., August 27, 1956.—Plaintiff, Josephine V. Curry, was a passenger on a streetcar of additional defendant, Lehigh Valley Transit Company. After alighting from the conveyance, she was struck by a motor vehicle owned by defendant, Frank A. Napolitano, trading as Snooks Sandwich Shop. She and her husband instituted an action against this defendant who in turn joined Lehigh Valley Transit Company as an additional defendant. Subsequently, plaintiffs de-

livered a release to the original defendant for which the consideration was $3,000. The action then came to trial against additional defendant. At the close of plaintiff's case, the court entered a compulsory non-suit and the matter is now before us on a motion to take off the same.

Plaintiff's testimony reveals that the accident occurred on November 7, 1951, at 2:45 p.m. The weather was clear but the surface of the street was still wet as a result of a rain which had ceased some time prior to the happening of the accident. Mrs. Curry boarded the streetcar in Allentown and was homeward bound toward the neighboring city of Bethlehem. The streetcar was proceeding in an easterly direction on Union Boulevard and as it approached the intersection of Grandview Boulevard, which runs in a north-south direction, she signaled her intention to alight.

The intersection in question is a "T" intersection with Grandview Boulevard forming the vertical part of the "T" and West Broad Street the horizontal bar. The carrier's east and west bound trolley tracks were located to the north of the cartway, the entire cartway being to the south of the tracks on which the east and west vehicular traffic moved. Plaintiff had traveled this route many times as a passenger of defendant and she was familiar with the intersection which had no traffic lights or safety zone; she was fully aware that it was a regular stopping place for the streetcars and that the vehicular traffic in both directions used West Broad Street south of the tracks.

The motorman, called by plaintiff as her witness, testified that when he stopped the car, he observed the Napolitano vehicle approaching approximately 200 feet from the intersection. He could not estimate the speed, although he suggested that it was not traveling as fast as 50 miles per hour and he indicated that he paid no further attention to it because he assumed that

the driver would stop the vehicle while the trolley was discharging passengers. Plaintiff testified that she looked towards the east before she stepped down but for some reason she could not explain her failure to see the approaching vehicle at that time. Before the streetcar moved and after she stepped into the street, she looked up, saw the car coming and was struck almost immediately. On these facts the court granted the motion for a compulsory nonsuit.

We believe that the compulsory nonsuit was properly entered.

It should first be observed that the point where the motorman discharged plaintiff was a regular stopping point, and this factor immediately distinguishes the factual situation in O'Malley v. Laurel Line Bus Co., 311 Pa. 251, which plaintiff's counsel contends should be the rule of our case. We fully recognize that a common carrier owes to its passengers the highest degree of care and diligence in carying them to their destination and enabling them to alight in safety and to avoid any possible damage while doing so, but it must be noted that in O'Malley v. Laurel Line Bus Co., supra, the driver of the carrier made his stop some 250 feet from the place where he said he would let plaintiff off, and instead of being on the right-hand side of the street, as admittedly it should have been, it was in the center thereof, and instead of being at the curb where it usually was when passengers were to be discharged, it was about 16 feet therefrom. The operator in that case did not advise plaintiff of either of these facts, nor, owing to the dark and stormy night and the location of the bus, did plaintiff know of either of them. In the case at bar it is clear that the motorman did not discharge his passenger in the middle of a block or in the face of obviously dangerous circumstances.

The motorman cannot be charged with failing to anticipate that the oncoming motorist would not abide

by the mandate of The Vehicle Code, and his testimony is clear that he had no reason to believe that his speed was at a rate that he could not stop. The applicable provision of The Vehicle Code of May 1, 1929, P. L. 905, sec. 1017, as amended, 75 PS §592(b), is as follows:

"No operator of a vehicle who meets or overtakes a street passenger car, that has stopped for the purpose of taking on or discharging passengers, shall pass said car on the side on which the passengers get on or off, until the car has started, and until any passengers who may have alighted have reached the side of the highway, except that, where a safety zone has been established, or at an intersection where traffic is controlled by a peace officer or a traffic signal, a vehicle need not be brought to a full stop before passing any such railway, interurban, street car, but may proceed past such car at a speed not greater than is reasonable or proper, and in no event greater than ten (10) miles an hour and with due caution for the safety of pedestrians."

It has been held that a passenger, when alighting from a streetcar which had stopped to discharge passengers, cannot be charged, as a matter of law, with contributory negligence where he failed to look for an approaching vehicle or anticipate that one would attempt to pass in violation of this requirement of The Vehicle Code: Bohm v. Beckdol and Welker, 81 Pa. Superior Ct. 178; Hanley v. Bakey, 77 Pa. Superior Ct. 36. Thus, if the injured plaintiff had a right to assume that the motorist would obey the command of the statute, it clearly follows that the motorman in our situation cannot be charged with the duty to anticipate the violation. In support of this proposition, we find the Supreme Court in Klingensmith v. West Penn Rys. Co., 279 Pa. 336 holding as follows:

". . . The legislature having enacted a law forbid-

ding the driver of an automobile to pass a standing street car on the side from which passengers are being received or discharged, the railway company was not bound to anticipate that automobilists would disregard the law."

Our factual situation is remarkably similar to Reid v. Scranton Transit Company, 339 Pa. 225. There the plaintiff, after the car had stopped, grasped the handrail at the door, placed his left foot upon the stationery step, extended his right foot to the pavement when instantly his leg was struck by a truck coming from the north. The trial judge reached the conclusion that there was no evidence of negligence on the part of the transit company. In affirming the judgment of the lower court, it was held that defendant was not required to foresee a violation of The Vehicle Code by a passing motorist.

Counsel for plaintiff urges this court to adopt the view that the principle of Reid v. Scranton Transit Company, supra, is not applicable for the reason that the motorman in our situation observed an oncoming car. We do not deem this fact sufficient to distinguish the case for the reason that plaintiff produced no testimony to show that she was deposited at an "obviously perilous point" which was the basis of the decision in O'Malley v. Laurel Line Bus Co., supra, and, more recently, in Brown v. Ambridge Yellow Cab Co., 374 Pa. 208, where a taxicab driver stopped his cab at a point opposite the passengers' destination and discharged them out of the left door into the middle of the street. Moreover, plaintiff was in no way *mistakenly led to alight* at an "extremely dangerous place" which was the situation in most of the cases cited by plaintiff.

In Harris v. DeFelice, 379 Pa. 469, the passenger in a carrier of Pittsburgh Railways Company was discharged directly across the street from an inn, which admittedly *was not a regular car stop*. A compulsory

nonsuit against the railway company was sustained by the Supreme Court which held that the carrier did all that it was required to do under the law. It is manifestly clear that the carrier's position in the case at bar is stronger than in the Harris case.

We have considered the facts and the reasonable inferences therefrom in a light most favorable to plaintiff as we are required to do: Jones v. Carney, 375 Pa. 32. We cannot, however, conclude that there is any evidence of actionable negligence on the part of this additional defendant.

### Order

Now, August 27, 1956, the motion to take off the compulsory nonsuit is denied.